UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In Re: | ) | |
|     RHONDA J. LEWALLEN, | ) | |
| | ) | |
|         Plaintiff. | ) | Bankruptcy Case No. 04-50195 |
| | ) | |
| RHONDA J. LEWALLEN, | ) | Chapter 13 |
| | ) | |
|         Plaintiff, | ) | Adversary Proc. No. 05-5013-jwv |
| | ) | |
|   vs. | ) | |
| | ) | |
| GREEN TREE SERVICING LLC, | ) | |
| | ) | |
|   and | ) | |
| | ) | |
| U.S. BANK TRUST NATIONAL ASSOCIATION, | ) | |
| as Trustee of Conseco Finance Home Equity | ) | |
| Loan Trust 2000-F, | ) | |
| | ) | |
|         Defendants. | ) | |

**SUGGESTIONS IN OPPOSITION TO MOTION TO DISMISS PETITION
OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION**

COMES NOW the Plaintiff Rhonda Lewallen, by and through counsel, and in response to Defendants' Motion to Dismiss Plaintiff's Petition or, in the Alternative, to Compel Arbitration, states as follows:

**Statement of the Facts**

Rhonda Lewallen has filed an adversary proceeding, which in essence raises objections to the Amended Proof of Claim filed by Defendant Green Tree. On February 23, 2004, Rhonda Lewallen initially sought relief from this Court pursuant to Chapter 13 of the Bankruptcy Code due to a scheduled foreclosure sale of her home that same day. Complaint, ¶23. Green Tree Servicing LLC (hereinafter "Green Tree") filed a Proof of Claim in Ms. Lewallen's underlying

bankruptcy case on March 16, 2004, alleging a secured claim in the amount of $54,502.99, with

an arrearage of $4,652.84 purportedly owed by Ms. Lewallen.  On July 5, 2004, Rhonda

Lewallen filed her Objection to said claim.  In response, on July 28, 2004, Green Tree, now

using the name of "Green Tree Financial Servicing, LLC," (hereinafter "Green Tree II") filed an

Amended Proof of Claim in the bankruptcy case.  In its amended claim, Green Tree II claimed

that $54,471.25 was owed, not the $54,502.99 previously claimed, including an arrearage of

$4,652.84.

To this Amended Proof of Claim, Rhonda Lewallen filed an Objection on August 31,

2004.  In summary, that Objection alleged that:

1.      Green Tree II's Amended Claim included excessive charges and fees,

2.      Green Tree II had failed to properly credit Ms. Lewallen for payments made,

3.      Green Tree II had wrongfully refused to accept Ms. Lewallen's payments,

4.      Green Tree II's billing statements had been inconsistent, evasive, and confusing, and

5.      Green Tree II had failed to respond to Ms. Lewallen's "qualified written requests" in violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e).

On September 17, 2004, counsel for Ms. Lewallen served Interrogatories, a Request for

Production of Documents, and a Request for Admissions upon Green Tree II.

On March 22, 2005, this Court granted the oral motion of Green Tree that the aforesaid

Objection be denied on the basis that it should have been filed as an adversary proceeding

instead of merely an Objection, and thus denied Rhonda Lewallen's Objection "without

prejudice to its refiling in conjunction with an adversary case."  Thus, at the direction of this

Court, Rhonda Lewallen filed her Complaint in the above-referenced cause on May 24, 2005.

The Complaint was filed as an objection to the secured claim filed by Green Tree, and to assert

affirmative claims against Green Tree and U.S. Bank Trust National Association, as Trustee of

Conseco Finance Home Equity Loan Trust 2000-F (hereinafter "U.S. Bank").

As originally raised in her Objection to Proof of Claim, Rhonda Lewallen has alleged in

her Complaint that:

1.      The Amended Claim included excessive charges and fees,

2.      Green Tree had failed to properly credit Ms. Lewallen for payments made,

3.      Green Tree had wrongfully refused to accept Ms. Lewallen's payments,

4.      Green Tree's billing statements had been inconsistent, evasive, and confusing,
        and

5.      Green Tree had failed to respond to Ms. Lewallen's "qualified written requests"
        in violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e).

In her Complaint, Rhonda Lewallen additionally alleged, upon information and belief,

that U.S. Bank was the true holder of the Loan, not Green Tree or Green Tree II, and that Green

Tree and Green Tree II's misrepresentation to this Court that it was the "creditor" with respect to

Rhonda Lewallen's loan, when in fact it was at most a servicer, was an unfair and deceptive act.

Rhonda Lewallen's claims outlined above were framed as violations of the Real Estate

Settlement Procedures Act, violations of the Fair Debt Collection Practices Act (defensively, by

way of recoupment), and violations of the Missouri Merchandising Practices Act.

At no time did Green Tree, Green Tree II or U.S. Bank move to compel arbitration or in

any manner object to the Bankruptcy Court's jurisdiction of this cause for more than 16 months

after filing the initial Proof of Claim with this Court on March 16, 2004.  However, on July 28,

2005, Defendants filed the pending Motion to dismiss or to compel arbitration.

## Argument

**I.      The Bankruptcy Court has discretion whether to enforce an arbitration provision in a core proceeding.**

A motion to compel arbitration raised in a bankruptcy proceeding brings into conflict two federal statutes:  the Federal Arbitration Act (FAA) and the Bankruptcy Code.   The FAA requires that where a valid and enforceable arbitration agreement exists, courts should halt their proceedings while an arbitrator determines the rights of the parties to the arbitration agreement and adjudicates the dispute in controversy.  9 U.S.C. § 3.  While the Defendants seek a dismissal of the pending adversary proceeding, the FAA merely provides for the stay of a proceeding or for an order compelling arbitration, not dismissal.  9 U.S.C. §§ 3 and 4.

On the other hand, the Bankruptcy Code provides for one forum to resolve all disputes affecting the administration of a party's bankruptcy estate, with the goal of swift adjudication of claims and access to the courts.  In re Hemphill Bus Sales, Inc., 259 B.R. 865 (Bankr. E.D. Tex. 2001); In re Trident Shipworks, Inc., 243 B.R. 130, 132 (Bankr. M.D. Fla. 1999).   The bankruptcy court and the district court acting as one unit have exclusive jurisdiction over all of the property, "wherever located," of the debtor, and of property of her estate.  28 U.S.C. § 1334(e).  One of the primary purposes of bankruptcy effectuated by Sections 362 and 105 of the Code is to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas."  In re U.S. Lines, Inc., 197 F.3d 631, 640 (2nd Cir. 1999).  The centralized forum of the bankruptcy court protects creditors and reorganizing debtors from piecemeal litigation, and provides the undisputed power of the court to enforce its own orders. In re Gandy, 299 F.3d 489 (5th Cir. 2002).

The federal presumption that valid arbitration agreements should be enforced, thus, is

often in direct conflict with the purposes of the Bankruptcy Code.  The first Court of Appeals to address the conflict between the FAA and the Bankruptcy Code, the Third Circuit in Zimmerman v. Continental Airlines, Inc., found that bankruptcy courts have the "sound discretion" to determine whether arbitration should be stayed in order to protect the debtor.  Zimmerman v. Continental Airlines, Inc., 712 F.2d. 55, 59 (3d Cir. 1983) *cert. denied,* 464 U.S. 1038 (1984). "The intentions of Congress will be better realized if the Bankruptcy Reform Act is read to impliedly modify the [FAA]."  Id. at 59.

Most courts agree that, in a core proceeding, a bankruptcy court has discretion to decide whether to enforce a valid arbitration provision.  In re Mintze, 288 B.R. 95 (Bankr.E.D.Pa. 2003).  See also, In re Gandy, at 495 (a bankruptcy court may "refuse to enforce an otherwise applicable arbitration agreement when the underlying nature of a proceeding derives exclusively from the provisions of the Bankruptcy Code and the arbitration of the proceeding conflicts with the purpose of the Code"); In re United States Lines, Inc., 197 F.3d 631, 641 (2d Cir. 1999) ("It was within the bankruptcy court's discretion to refuse to refer the declaratory judgment proceedings, which it properly found to be core, to arbitration"); Selcke v. New England Insurance Company, 995 F.2d 688, 691 (7th Cir. 1993) ("Even broadly worded arbitration clauses are assumed not to extend to claims that arise out of the provisions of bankruptcy law itself . . ."); In re Hemphill Bus Sales, Inc., 259 B.R. 865, 871 (Bankr.E.D.Tex. 2001) ("The Bankruptcy Court is the most efficient and effective forum in which to determine core Bankruptcy Code issues and this dispute."); In re Spectrum Information Technologies, Inc., 183 B.R. 360, 363 (Bankr.E.D.N.Y 1995) ("notwithstanding the strong federal policy favoring arbitration, the District Courts and the Bankruptcy Courts within the Second Circuit have historically found, especially with respect to core proceedings, that arbitration should not triumph over the specific

jurisdiction bestowed upon the bankruptcy courts under the Bankruptcy Code").

Permitting arbitration to proceed independently of a bankruptcy case can subject debtors and other interested parties to piecemeal litigation, a depletion of estate assets on arbitration costs, and an inequitable treatment of claims.  Such results are contrary to the broad grant of authority given to bankruptcy courts to stay all actions or proceedings against the debtor so that a fair administration of the debtor's estate, including a balancing of the diverse parties' interests, can take place in a single forum.  In re United States Lines, Inc., 197 F.3d 631, 640 (2d Cir. 1999), *quoting* In re Ionosphere, 922 F.2d 984, 989 (2d Cir. 1990) ("one of the core purposes of bankruptcy effectuated by Sections 362 and 105 of the Code is to allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.")  *See Also* In re Larocque, 283 B.R.640 (Bankr. D.R.I. 2002).

## II.   The pending action is a core proceeding and thus arbitration is inappropriate.

The above-referenced adversary proceeding is a core proceeding.  Core proceedings include the "allowance or disallowance of claims against the estate," and "counterclaims by the estate against persons filing claims against the estate."  28 U.S.C. § 157(b)(2)(B) and (C).  See also, In re Hicks, 285 B.R. 317 (Bankr.W.D.Okla. 2002) (debtor's objection to lender's secured claim is core proceeding); In re Pate, 198 B.R. 841 (Bankr. S.D. Ga. 1996) (Truth-in-Lending Act adversary proceeding filed in response to creditor's proof of claim in Chapter 13 case is core proceeding).

The claims set forth in Rhonda Lewallen's adversary proceeding are inextricably tied to Green Tree's Proof of Claim and thus this Chapter 13 bankruptcy proceeding.  The claim filed by Green Tree involves the existence or enforceability of the single largest debt of the

bankruptcy estate.   The resolution of this matter is absolutely essential to Rhonda Lewallen's

successful completion of her Plan, and will determine whether Ms. Lewallen will be financially

able to retain her home.   Moreover, it will affect how creditors will be provided for under the

Plan.

The outcome of this adversary proceeding will have a critical impact on Rhonda

Lewallen's Chapter 13 Plan.   If Rhonda Lewallen is successful in her challenge to the Claim,

there may be assets in the estate with which to pay other creditors.   The determination of Green

Tree's claim goes "to the very heart and purpose of the Bankruptcy Code:  the expeditious and

equitable distribution of the assets of the Debtor's estate and the Debtor's opportunity for a fresh

start."  In re Hemphill Bus Sales, Inc., 259 B.R. at 871.   The issues pending before this Court are

too critical to the success of the pending bankruptcy to be relegated to a non-judicial body.

Thus, referring this matter to arbitration would not be consistent with the purpose of the

Bankruptcy Code.

Application of the factors that bankruptcy courts generally consider in exercising

discretion whether to enforce an arbitration agreement also compels retention of jurisdiction by

this Court.   These factors include (1) the degree to which the nature and extent of the litigation

and evidence would make the judicial forum preferable to arbitration, (2) the extent to which

special expertise is necessary to resolve the dispute, and (3) the extent to which the bankruptcy

court may more efficiently and economically resolve the dispute, and without depleting estate

assets.  *See*, *e.g.*, In re Hemphill Bus Sales, Inc., 259 B.R. 865 (Bankr. E.D. Tex. 2001); In re

Trident Shipworks, Inc., 243 B.R. 130 (Bankr. M.D. Fla. 1999); In re Edgerton, 98 B.R. 392

(Bankr. N.D. Ill. 1989).

As to the first factor, because this litigation is so closely related to the debtor's Chapter 13 Plan, it is clearly preferable for this Court to oversee and ultimately resolve the adversary proceeding.  Already extensive discovery has been served by both parties, and in order to control the pending discovery and future discovery requests, this dispute clearly lends itself to the authority of the Court and the federal discovery rules rather than to arbitration, "where discovery rules may not be available nor even necessary by reason of the arbitration process."  In re Spectrum Information Technologies, Inc., 183 B.R. at 364.

As to the second factor, there can be no question that the issues raised in this adversary proceeding require the special expertise of this Court.  Arbitrators clearly do not have expertise in deciding issues such as the "allowance" of claims.  More importantly, these issues are within the exclusive jurisdiction of the bankruptcy court and should be "protect[ed] from collateral attack from another forum."  In re Cavanaugh, 271 B.R. 414, 424 (Bankr. D.Mass. 2001).

The third factor also favors retention by this Court since it can more efficiently and expeditiously resolve this case.  It would be inefficient and a waste of judicial resources for an arbitrator to decide some but not all of the issues raised in this adversary proceeding, as this Court would ultimately need to resolve the bankruptcy issues.  Given that all of the Debtor's disposable income is to be devoted to her Chapter 13 Plan, any costs imposed in the arbitration forum will also seriously impact on her Plan.

Finally, a fourth factor compels the denial of a referral to arbitration.  Unlike an arbitrator, this Court must consider the impact of this adversary proceeding on other creditors. The amount of the mortgage debt, and the issue of whether Ms. Lewallen will retain her home, all necessarily affect the distribution and treatment of all creditors' claims.

**III.     Defendants have waived their right to pursue arbitration.**

On March 16, 2004, Green Tree filed its first Proof of Claim in Rhonda Lewallen's underlying bankruptcy case.  In refusing to compel arbitration, the Court in <u>Gandy</u>, 299 F.3d at 499, noted that the filing of a proof of claim by a party invoked "the peculiar powers of the bankruptcy court."  For more than 16 months after filing its initial Proof of Claim with this Court, Green Tree raised no objection to the Bankruptcy Court's jurisdiction over this cause.  In fact, Green Tree's only response to the Rhonda Lewallen's Objection to the Amended Proof of Claim, was that the Objection should have been raised through an adversary proceeding.  At no time did Green Tree, Green Tree II or U.S. Bank move to compel arbitration or in any manner object to the Bankruptcy Court's jurisdiction of this cause until July 28, 2005 – more than 16 months after filing its initial Proof of Claim with this Court on March 16, 2004.

As reflected by the Certificates of Service filed herein, on June 21, 2005, counsel for Rhonda Lewallen served discovery in the above cause upon Green Tree, and on July 1, 2005, counsel for Defendants served discovery upon Rhonda Lewallen.  The discovery served by both parties was extensive.  That served by Defendants upon Rhonda Lewallen included not only 17 interrogatories, but also 58 subparts, and 20 requests for production.  On July 15, 2005, Defendants filed a Motion seeking an extension of time until August 15, 2005 for Defendants to respond to discovery, and on July 18, 2005, filed a motion to continue the trial setting.  Even after filing their Motion to dismiss or compel arbitration, Defendants have proceeded with litigation in this case.  Although Defendants have sought extensions of time to respond to Plaintiff's discovery, at no time have Defendants withdrawn (or even requested an extension of the deadline for Plaintiff to respond to) their extensive discovery requests, which responses are due on August 23, 2005.

Section § 3 of the FAA conditions the stay of proceedings for arbitration "providing the applicant for the stay is not in default in proceeding with such arbitration."  A default in proceeding with arbitration, resulting in waiver of an arbitration agreement occurs when a party actively participates in a lawsuit or takes other action inconsistent with the right to arbitrate. N & D Fashions, Inc. v. DHJ Industries, Inc., 548 F.2d 722 (8th Cir. 1976).  Participation in formal discovery or other litigation, this has been held to be a waiver by a party of their right to arbitration.  PPG Industries, Inc. v. Webster Auto Parts, Inc., 128 F.3d 103 (2nd Cir. 1997); Southern Systems, Inc. v. Torrid Oven Ltd., 105 F.Supp.2d 848 (W.D.Tenn. 2000); Steinberg & Lyman v. Takacs, 774 F.Supp. 885 (S.D.N.Y. 1991).

Defendants' filing of proofs of claim, failure to request arbitration in a timely manner and participation in extensive pretrial discovery all reflect an acquiescence to proceeding in the Bankruptcy Court, as opposed to arbitration.  Accordingly, Defendants have waived their right to insist upon arbitration of the pending cause.

**IV**.    **Arbitration should not be compelled due to the costs to the bankruptcy estate.**

It is axiomatic that an arbitration agreement that prevents a person from obtaining relief under a statutory claim is unenforceable because it conflicts with the legislature's purpose in enacting the statute.  By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute, the party only submits to the resolution of their claims by an arbitrator, instead of a judicial forum.  The United States Supreme Court has authorized mandatory arbitration for statutory claims, but only "so long as the prospective litigant effectively may vindicate [her] statutory cause of action in the arbitral forum."  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985) (emphasis added).

High arbitration fees can be a substantial impediment to pursuing a claim in arbitration,

and thus the cost of arbitration must be considered.  This is a Chapter 13 proceeding, wherein

Rhonda Lewallen pays all of her disposable income each month to the Chapter 13 Trustee for

distribution to her creditors.  As set forth in Schedule I, Rhonda Lewallen is a single mother of

three children, whose total household monthly income consists of SSI Disability and Food Stamp

benefits, totaling $1,603.  Of this amount, $524.76 is paid in monthly mortgage payments, and

$110 per month is paid to the Chapter 13 Trustee.  Due to her limited income, no additional

funds are available to pay for arbitration costs.

No courts fees were required for Rhonda Lewallen to file either her Objection to Claim or

the pending Complaint.  In a bankruptcy court proceeding, no additional fees are required to pay

for the services of a judge, court reporter, subpoenas, travel expenses, or the numerous other

expenses charged to those participating in arbitration.

Should the case be arbitrated, the costs of arbitration will be substantial, and unaffordable

for Rhonda Lewallen.  As Defendants have not yet selected an arbitral forum, the exact costs of

arbitration cannot yet be determined.  However, generally these costs include a substantial initial

filing fee, administrative fees, room rental fees, court reporter fees, and the daily (or hourly) fees

for the arbitrator.  As noted by the Court in <u>Cole v. Burns International Security Services</u>, 105

F.3d 1465, 1484 (D.C.Cir. 1997):

> However, if an employee like Cole is required to pay arbitrators' fees ranging
> from $500 to $1,000 per day *or more, see* note 8 *supra,* in addition to
> administrative and attorney's fees, is it likely that he will be able to pursue his
> statutory claims? We think not. . . .  These fees would be prohibitively expensive
> for an employee like Cole, especially after being fired from his job, and it is
> unacceptable to require Cole to pay arbitrators' fees, because such fees are unlike
> anything that he would have to pay to pursue his statutory claims in court.

Fees for arbitration are in the thousands of dollars.  These costs are widely acknowledged

in case law.  See e.g. <u>Phillips v. Associates Home Equity Services, Inc.</u>, 179 F.Supp. 2d 840, 846

(N.D. Ill 2001):

> Furthermore, the initial filing fee is far from the only cost involved in arbitration. The AAA's Commercial Rules provide that the arbitrator's fees, (which range from $750 to $5000 per day with an average of $1800 per day in the Chicago area), travel expenses, rental of a hearing room, and other costs are borne equally by the parties…

*See also* Camacho v. Holiday Homes, Inc., 167 F. Supp.2d 892, 897, (W.D. Va. 2001):

> However, even if the initial $2,000 in administrative fees were waived or deferred, Mrs. Camacho has demonstrated that the additional costs of the arbitration process itself amount to an insurmountable financial burden to her.

A Court in Washington state found that ". . . a borrower's cost for arbitration likely would exceed the cost of a court proceeding by at least a factor of ten." Luna v. Household Finance Corp. III, 236 F. Supp. 2d 1166, 1182 (W.D. Wash. 2002).

The FAA requires that arbitration agreements be enforced, if at all, according to their terms, not according to new terms invented to avoid illegality or other violations of contract principles. Contracts may be modified because the writing does not accurately reflect the parties' intentions, but they cannot be modified because the contract contravenes statute. Webster v. Woods, 586 P.2d 337 (Ok. App. 1978). *See also* Horton Insurance Agency, Inc. v. Robinson, 824 P.2d 397 (Ok. App. 1991). The Ohio Court of Appeals has stated it most clearly, "It is not the responsibility or function of this court to rewrite the parties' contract in order to provide for a more equitable result." Wauseon Plaza Limited Partnership v. Wauseon Hardware Co. 807 N.E. 2d 953, 961 (Ohio Ct. App. 2004). This general principle applies to arbitration clauses as well as any other type of clause. A large number of federal and state courts throughout the United States have refused to rewrite arbitration clauses that are unconscionable or otherwise unenforceable. The reason usually given is straightforward: if courts step in to fix illegal contracts, corporations will have no disincentive to drafting unfair and unconscionable

contracts.

> To sever the costs and fees provision and force the employee to arbitrate a Title
> VII claim despite the employer's attempt to limit the remedies available would
> reward the employer for its actions and fail to deter similar conduct by
> others…Under the contrary approach, an employer will not be deterred from
> routinely inserting such a deliberately illegal clause into the arbitration agreement
> it mandates for its employees if it knows that the worst penalty for such illegality
> is the severance of the clause after the employee has litigated the matter… Cooper
> v. MRM Investment Co., 367 F.3d 493, 512 (6th Cir. 2004).

> [I]f I were to accept defendant's proposal [to pay the plaintiff's share of the costs
> of arbitration and to drop the provision of the clause shortening the period for
> limitations], employers would have no incentive to ensure that a coerced
> arbitration agreement is fair to both sides.  Instead, the employer could write a
> one-sided agreement that favors the employer, and then make the bare minimum
> modifications necessary to obtain the court's approval.  LeLouis v. Western
> Directory Co., 230 F. Supp. 2d 1214, 1225 (D. Or. 2001).

*See also* Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 940 (4th Cir. 1999) (where the

improper provisions of an arbitration clause are "by no means insubstantial," the court "therefore

permit[ed the employee] to cancel the agreement and thus Hooters' suit to compel arbitration

must fail." Flores v. Transamerica HomeFirst, Inc., 93 Cal. App. 4th 846, 857 (2001) ("it strikes

us as woefully unfair to allow HomeFirst at this late date- after a dispute has arisen and after the

reverse mortgage has terminated – to refute the unconscionable aspect of the arbitration

agreement which HomeFirst itself drafted and from which HomeFirst stood to benefit over the

life of the loan.") Paladino v. Avnet Computer Technologies, Inc., 134 F.3d 1054, 1058 (11th

Cir. 1998); Graham Oil Co. v. Arco Prods. Co., 43 F.3d 1244 (9th Cir. 1994); Underwood v.

Chef Francisco/Heinz, 200 F. Supp.2d 475 (E.D. Pa. 2002).

This concern is also strongly expressed in the Second Restatement of Contracts.  It states,

"[A] court will not aid a party who has taken advantage of his dominant bargaining power to

extract from the other party a promise that is clearly so broad as to offend public policy by

redrafting the agreement so as to make a part of the promise enforceable." Restatement (Second)

of Contracts § 184, comment b.

Numerous courts around the country have also refused to rewrite arbitration clauses in a

closely analogous situation.  In a great many cases, defendants facing judicial review of dubious

arbitration clauses have volunteered to change the contract, to avoid having the clause struck

down.   In most cases, the change is that the defendant belatedly offers to pay the costs of

arbitration, but that does not salvage the arbitration agreement.

> McDonald's has now offered to pay the arbitration fees…This is not a basis for
> reconsideration of the Court's ruling.  We agree with Popovich that McDonald's
> offer, which is inconsistent with the parties' contract, amounts to an offer for a
> new contract.  Popovich is under no obligation to accept McDonald's offer, and
> the court is in no position to impose it.  As a matter of elementary contract law,
> McDonald's cannot unilaterally modify the existing agreement.   Popovich v.
> McDonalds, 189 F.Supp. 2d 772, 779 (N.D. Ill. 2002).

The Oregon court, in refusing to allow a defendant to "voluntarily pay" the costs of

arbitration, noted that "the fairness of a contract must be viewed as of the time the contract was

formed' and that "this court may not rewrite the contract for the parties." LeLouis v. Western

Directory Co., 230 F.Supp. 2d 1214, 1225 (D. Or. 2001).  The Ohio Supreme Court likewise

refused to enforce an arbitration clause that imposed prohibitive costs upon a consumer in a

financing transaction, rather than rewrite the clause to make it enforceable. Williams v. Aetna

Finance Company, 700 N.E.2d 859 (Ohio 1998).

Thus, the enormous expenses that arbitration would generate to be paid out of the

debtor's estate, and the obligation of this Court to either enforce the agreement as written or

strike it entirely, necessitate the latter action.  The Court has that discretionary power.  The 10th

Circuit Court has stated that it is within the sound discretion of the Court to retain claims related

to the bankruptcy.

> The test of whether a civil proceeding is related in bankruptcy is whether the
> outcome of that proceeding could conceivably have any effect on the estate being

- 14 -

administered in bankruptcy.     In re Gardner, 913 F.2d 1515, 1518 (10th Cir. 1990).

The Bankruptcy Code provides for one forum to resolve all disputes affecting the administration of a party's bankruptcy estate, with the goal of swift adjudication and access to the courts. Furthermore, by staying all other proceedings upon filing for bankruptcy, the court protects the rights of creditors who would be prejudiced if the limited assets of a bankrupt estate were used to pay outside costs, such as those associated with arbitration. See In re Slipped Disc, Inc., 245 B.R. 342, 344 (Bankr. N.D. Iowa 2000); In re Knepp, 229 B.R. 821, 845 (Bankr. N.D. Ala. 1999).

**V.      The validity of the arbitration provision at issue is to be determined by the Court.**

Though the FAA was primarily intended to promote the enforcement of arms length agreements between sophisticated commercial entities, In re Knepp, 229 B.R. 821 (Bankr. N.D. Ala. 1999), arbitration clauses found in form consumer contracts are generally enforceable where they have not been obtained by fraud or duress, and where the terms are not unconscionable. Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265 (1995).

As argued by Defendants, the FAA evinces a liberal policy favoring arbitration agreements. Defendants' Memorandum, page 3. However, the law favors the enforcement of only valid agreements to arbitrate. Before a party may be compelled to arbitrate under the FAA, a court must first determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the substantive scope of that agreement. Houlihan v. Offerman & Co., Inc., 31 F.3d 692, 694-95 (8th Cir. 1994). Section 2 of the FAA states that an agreement to arbitrate "shall be valid, irrevocable and enforceable, *save upon such grounds as exist in law or equity for the revocation of any contract.*" 9 U.S.C. § 2 (emphasis added).

In determining whether an arbitration agreement is valid, federal courts must apply

ordinary state law principles that govern the formation of contracts.  <u>Doctor's Associates, Inc v.</u>
<u>Casarotto</u>, 517 U.S. 681 (1996).  "Thus, generally acceptable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]."  <u>Id</u>. at 687.

The issue of whether an arbitration agreement is valid is premised on the facts of the particular case.  In the instant case, discovery is needed with respect to this issue prior to an evidentiary hearing.  Thus, Plaintiff requests leave to file additional discovery with respect to this issue, prior to any hearing regarding the validity of the arbitration clause.

## Conclusion

For the reasons set forth herein, Rhonda Lewallen's claims should be heard by the Bankruptcy Court, and the Defendants' Motion be denied.  Note:  with respect to Defendants' Supplemental Memorandum of Law raising additional grounds for dismissal of Plaintiff's Complaint, Plaintiff will file Supplemental Suggestions in response thereto.

Respectfully submitted.


/s/ Susan Kephart
SUSAN KEPHART, Bar No. 27907
Legal Aid of Western Missouri
1125 Grand, Suite 1900
Kansas City, MO 64106
(816) 474-6750
Fax:  (816) 474-9751
skephart@lawmo.org
Attorney for Plaintiff/Debtor

## Certificate of Service

The undersigned counsel and here certifies that on this 17th day of August, 2005, the foregoing Suggestions were served electronically upon David G. Wasinger, James S. Cole, Murphy Wasinger L.C., counsel for Defendants, and that a true copy of the foregoing was served by first-class, postage prepaid mail upon:

> Richard V. Fink
> Chapter 13 Trustee
> 818 Grand, Suite 800
> Kansas City, Missouri 64106

> /s/ Susan Kephart
> Attorney for Plaintiff/Debtor